PD-0705-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 8/14/2015 8:49:30 PM
Accepted 8/17/2015 2:34:18 PM
ABEL ACOSTA
CLERK

# No. PD-0705-15

_____

IN THE TEXAS COURT OF CRIMINAL APPEALS

_____

SAMMY VIDALES
*Appellant,*

v.

THE STATE OF TEXAS
*Appellee.*

_____

On Review from the Seventh Court of Appeals at Amarillo, Texas

_____

# APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

_____

FILED IN
COURT OF CRIMINAL APPEALS

August 17, 2015

ABEL ACOSTA, CLERK

Frank Sellers
Texas Bar No. 24080305
HURLEY, GUINN & SELLERS
1805 13th Street
Lubbock, Texas 79401
P: 806.771.0700
F: 806.763.8199
frank@hurleyguinn.com
*Attorney for Appellant*

**ORAL ARGUMENT REQUESTED**

**Trial Court Judge**
Honorable John McClendon
137th District Court

**Defendant/Appellant**          **Trial and Appellate Counsel**

Sammy Vidales          Frank Sellers
                       HURLEY, GUINN & SELLERS
                       1805 13th Street
                       Lubbock, Texas 79401
                       P: (806) 771-0700
                       F: (806) 763-8199
                       E: frank@hurleyguinn.com

**The State of Texas**          **Appellate Counsel**

                       Jeff Ford
                       LUBBOCK COUNTY DISTRICT ATTORNEY'S OFFICE
                       P.O. Box 10536
                       Lubbock, Texas 79408-3536

                       **Trial Counsel**

                       Robert Withers and Clay Kimbrough
                       LUBBOCK COUNTY DISTRICT ATTORNEY'S OFFICE
                       P.O. Box 10536
                       Lubbock, Texas 79408-3536

# TABLE OF CONTENTS

Identity of Judge, Parties, and Counsel ..................................................................i

Table of Contents.................................................................................................ii

Index of Authorities ..........................................................................................iv

Statement Regarding Oral Argument .....................................................................1

Statement of the Case ...........................................................................................2

Statement of Procedural History............................................................................3

Grounds for Review ..............................................................................................4

Statement of Facts.................................................................................................5

Argument & Reasons for Review ...........................................................................9

    I.   The court of appeals rendered the rules meaningless when it abandoned its judicial role and assumed the role of an advocate to raise and decide an issue not briefed, argued, or addressed by either party at any time. ...................................9

        A.  By advancing an argument on an issue not actually before it, the court of appeals disregarded decisions of this Court and numerous courts of appeal ....9

        B.  Whether a court of appeals may adopt and advance its own legal theory of the case even though it was not argued to the jury or contemplated at any point in the trial court is an issue of first impression. ......................................13

        C.  By re-framing the issue and advancing a brand new theory never argued or adopted by either party at any point, the court of appeals misconstrued the rules..............................................................................................................14

        D.  The constitutional implications involved necessitate this Court's exercise of its supervisory power..........................................................................................14

    II.   The court of appeals erred when it held Vidales's *two* encounters with Officer Anderson could have constituted *three* possible units of prosecution.....17

III.  The court of appeals erred when it failed to cite, analyze, or apply controlling caselaw cited by both the State and Vidales. ...................................19

IV.  The court of appeals erred when, despite trial counsel's affidavit confessing ineffective assistance, it claimed the record was insufficiently developed to decide the issue. ........................................................................21

Prayer for Relief ..........................................................................24

Certificate of Service ...................................................................25

Certificate of Compliance ...........................................................25

iii

# INDEX OF AUTHORITIES

## Cases

*Callaway v. State*, 743 S.W.2d 645, 651–52 (Tex. Crim. App. 1988). ..................... 10

*Commerce Comm'n v. Louisville & Nashville R.R. Co.*, 227 U.S. 88 (1913). .............. 16

*Cosio v. State,* 353 S.W.3d 766 (Tex. Crim. App. 2011). ........................................ 21

*Ex parte Varelas*, 45 S.W.3d 627 (Tex. Crim. App. 2001). ................................ 22, 24

*Freeman v. State*, 125 S.W.3d 505 (Tex. Crim. App. 2003) ................................... 23

*Hammock v. State*, 211 S.W.3d 874, 879 (Tex. App.—Texarkana 2006, no pet.). ... 11

*Hobbs v. State*, 175 S.W.3d 777 (Tex. Crim. App. 2005). .................................. 17, 18

*In re Winship*, 397 U.S. 358 (1970). ....................................................................... 14

*Lopez v. State*, 343 S.W.3d 137, (Tex. Crim. App. 2011). ...................................... 23

*Ngo v. State*, 175 S.W.3d 738, 745 (Tex. Crim. App. 2005) ................................... 21

*Pena v. State,* 191 S.W.3d 133, 136 (Tex. Crim. App. 2006) .............................. 11, 12

*Robinson v. State*, 377 S.W.3d 712 (Tex. Crim. App. 2012). ................................... 16

*Rylander v. State*, 101 S.W.3d 107 (Tex. Crim. App. 2003). .................................. 23

*Salinas v. State*, 163 S.W.3d 734 (Tex. Crim. App. 2005) ...................................... 22

*Sanchez v. State*, 182 S.W.3d 34, 63 (Tex. App.—San Antonio 2005), *aff'd,* 209 S.W.3d 117 (Tex. Crim. App. 2006) ................................................................ 15

*Sedani v. State,* 848 S.W.2d 314 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd). ................................................................................................................... 11

*See State v. Gonzales,* 850 S.W.2d 672 (Tex. App.—San Antonio 1993, no pet.). .. 11

*Shanklin v. State*, 190 S.W.3d 154 (Tex. App.—Houston [1st Dist.] 2005, pet. granted). ............................................................................................................ 23

*Sims v. State*, 99 S.W.3d 600 (Tex. Crim. App. 2003). .......................................... 19

*Skelton v. State*, 655 S.W.2d 302 (Tex. App.—Tyler 1983, pet. ref'd, untimely filed). ................................................................................................................. 11

*State v. Bailey*, 201 S.W.3d 739, 744 (Tex. Crim. App. 2006). .......................... 12, 14

*State v. Esparza*, 413 S.W.3d 81, 89 (Tex. Crim. App. 2013). ............................... 10

*State v. Mercado,* 972 S.W.2d 75, 77–78 (Tex. Crim. App. 1998) ............................ 10

*Steagald v. United States*, 451 U.S. 204, 209 (1981). ................................................ 12

*Thomason v. State*, 892 S.W.2d 8 (Tex. Crim. App. 1994) ...................................... 20

*Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999) .............................. 23

*Vidales v. State,* 07-13-00286-CR, 2015 WL 4116140 (Tex. App.—Amarillo July 7, 2015) .................................................................................... 15, 18, 20, 22

*Wilson v. State*, 692 S.W.2d 661, 663 (Tex. Crim. App. 1984) ................................ 10

**Statutes**

TEX. CODE CRIM. P. art. 38.23 ........................................................................... 17

**Rules**

TEX. R. APP. P. 66.3 .............................................................................. 14, 21, 24

TEX. R. APP. P. 68.1 .......................................................................................... 1

TEX. R. APP. P. 9.5 ............................................................................................ 25

# No. PD-0705-15

_____

IN THE TEXAS COURT OF CRIMINAL APPEALS
_____

SAMMY VIDALES
*Appellant,*

v.

THE STATE OF TEXAS
*Appellee.*

_____

TO THE HONORABLE JUDGES OF THE COURT OF CRIMINAL APPEALS:

COMES NOW APPELLANT, SAMMY VIDALES, by and through his counsel and pursuant to TEX. R. APP. P. 68.1, presents this Petition for Discretionary Review, and would show this Honorable Court the following:

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument would be of significant assistance to this Court because of the legal and factual complexities of the case and the grounds presented for review.

1

## STATEMENT OF THE CASE

Vidales was charged with a single count of evading detention in a vehicle. The State's theory of the case was that, even though it presented two instances where Vidales evaded detention, each separated by five hours, the facts presented constituted only one evading detention. Vidales's defensive theory was that his initial attempted detention was unlawful, making the evidence insufficient for conviction. Although it rejected the deadly weapon special issue, (CR 79), the jury convicted Vidales. (CR 77). Finding two enhancements paragraphs true, the jury imposed punishment at 62 years confinement. (CR 88). The State confessed error on appeal, explaining that the evidence was insufficient because the initial attempted detention of Vidales was unlawful.

## STATEMENT OF PROCEDURAL HISTORY

On May 15, 2015, the Seventh Court of Appeals issued its first opinion upholding Vidales's conviction but reversing and remanding for a new punishment trial. *Vidales v. State,* ____ S.W.3d ____, No. 07-13-00286-CR 2015 Tex. App. LEXIS 5033 (Tex. App.—Amarillo 2015, pet. filed). On June 10, 2015, Vidales filed a *pro se* motion requesting additional time to file a petition for discretionary review. This Court granted Vidales's *pro se* motion. On June 12, 2015, the State filed its own petition for discretionary review contesting whether a new punishment trial was appropriate. The same day, Vidales, through undersigned counsel, filed a motion to extend time to file a motion for rehearing in the court of appeals. (App. 2). The court of appeals denied the motion to extend time without explanation. On July 7, 2015, the court of appeals withdrew its original opinion and issued a substitute opinion. *Vidales v. State,* ___ S.W.3d ___, No. 07-13-00286-CR, 2015 Tex. App. LEXIS 5033 (Tex. App.—Amarillo 2015) (substitute) (App.2).[1] Pursuant to this Court's order granting Vidales's *pro se* motion to extend time, this petition for discretionary review is timely if filed on August 14, 2015.

---

[1] Hereinafter "*Slip op.*"

[2] *See Slip Op.* at 2, n.2 ("On June 15, 2015, Appellant did file a motion for rehearing; however, that motion was not timely filed.").

3

## GROUNDS FOR REVIEW

**1.** In a single prosecution for evading detention in a vehicle, where the State concedes that the evidence is insufficient to support that an initial attempted detention was lawful, can a court of appeals sidestep the State's confession of error to uphold the conviction by, instead, raising and deciding a separate point of error not briefed, argued, or addressed by either party, including at trial and on appeal?

**2.** When a citizen flees from the same officer, two distinct times, from two distinct places, with the encounters separated by five hours in which the officer is no longer attempting to arrest or detain the citizen, does this support one, two, or three units of prosecution for evading?

**3.** Does it violate Rule 47.1 and run afoul of *Sims* if a court of appeals summarily decides points of error without discussing the leading authorities (and in one point of error the only authority) cited by both parties in their briefs?

**4.** When trial counsel files an affidavit confessing ineffective assistance, specifically claiming certain decisions were mistakes (and not strategic), can a court of appeals claim the record is inadequate on direct appeal and altogether refuse to discuss or decide an ineffective assistance claim?

**5.** Appellants typically have up to 30 days after an opinion to file a motion to extend time to request rehearing in the court of appeals. Here, the court of appeals issued its original opinion on May 15, 2015. On June 12 — 28 days later — Vidales filed a proper motion to extend time requesting until June 15, 2015 to file his request for rehearing, which he ultimately filed on that date. If it denies the motion to extend time and claims the motion for rehearing is untimely, does a court of appeals violate Rules 4.1, 10.5, and 49.8, as well as deprive appellants of the right to rehearing and en banc consideration?[2] [unbriefed]

---

[2] *See Slip Op.* at 2, n.2 ("On June 15, 2015, Appellant did file a motion for rehearing; however, that motion was not timely filed.").

## STATEMENT OF FACTS

Shortly after midnight on October 7, 2012, Officer Justin Anderson of the Lubbock Police Department was dispatched in response to a domestic disturbance call at an apartment complex. (4 RR 26). The caller described the suspect as, "Black male, unknown clothing description." (4 RR 27). When Anderson arrived eleven minutes later, he learned the suspect had already left. (4 RR 37).

While walking back to his vehicle, Anderson noticed an SUV driving through the apartment parking lot without headlights on. (4 RR 39). Anderson shined his flashlight at the driver and ordered him to stop. The driver, Vidales, was obviously a Hispanic male. Even though Anderson knew Vidales was not the suspect he was searching for, Anderson demanded the keys to Vidales's vehicle. (4 RR 43; 91; 94). Vidales refused and drove away. Instead of chasing Vidales or calling for other officers, Anderson went on tending to other calls and other unrelated matters. (4 RR 48).

About five hours later, while on normal patrol, Anderson noticed Vidales's SUV, so he stopped the vehicle. The SUV pulled in and stopped in a motel parking lot. (4 RR 49). Anderson ordered the driver out at gunpoint. After some difficulty handcuffing him, Vidales ran back to his vehicle, backed out, and sped away. A chase, both in the vehicle and on foot, followed. Importantly, the only reason for

this second stop was "the suspicion of being the vehicle involved in evading five hours earlier." (4 RR 113).

The trial court instructed the jury on one count of evading detention in a vehicle. While deliberating, the jury asked multiple questions indicating it was unsure about the court's charge and what it was to consider for conviction. (CR Supp. 7 [asking which of the two encounters it was to consider for conviction]). The jury ultimately convicted Vidales of the single charged evading detention it was asked to consider.

Following his conviction, Vidales filed a motion for new trial. Attached to the motion was an affidavit from trial counsel. In it, trial counsel argued that he considered the facts, if sufficient, to constitute one continuous evading detention. Similarly, the State re-affirmed its position in a response to Vidales's motion for new trial. (CR 140 [arguing facts demonstrated "one continuous episode of Evading Detention in a Vehicle"]). In fact, the first chair prosecutor argued strenuously at the hearing on Vidales's motion, focusing exclusively on the first detention at the apartment complex. (RR Supp. 13-18). The trial court denied the motion.

The parties' arguments in the court of appeals are important. Vidales argued, *inter alia*, that the evidence presented constituted two evading detentions

6

and that because the initial attempted detention at the apartment complex was unlawful, the evidence was insufficient, and judgment of acquittal should be entered. The State confessed error, conceding that the evidence was insufficient to support that Anderson was *lawfully* attempting to detain Vidales at the apartment complex. Consistent with its position in the trial court, the State repeatedly maintained in its appellate brief that the facts presented to the jury constituted one continuous attempted detention.

The court of appeals, after reviewing the record but before deciding the case, ordered additional briefing on an unassigned, potentially meritorious punishment issue. *Vidales v. State*, 07-13-00286-CR, 2014 WL 5462476, at *1. (Tex. App.—Amarillo Oct. 28, 2014), *appeal decided*, 07-13-00286-CR, 2015 WL 4116140 (Tex. App.—Amarillo July 7, 2015). It never asked for supplemental briefing on the propriety Vidales's second detention at the motel parking lot. *See id.*

After both parties submitted additional briefing, the court of appeals, in relevant part, held that it agreed with the parties that Anderson's initial attempted detention at the apartment complex was unlawful. The court of appeals continued, however, and held that because Vidales did not challenge the lawfulness of the subsequent detention at the motel parking lot, he had waived the issue. The court of appeals then *sua sponte* concluded,

[A]t the time of the encounter at the motel parking lot, Officer Anderson was operating in good faith, under the objective (albeit incorrect) assumption that Appellant had earlier committed the offense of evading detention. Because a police officer's reasonable mistake about past facts may justify his conclusion that there is reasonable suspicion for purposes of an investigatory detention, *Robinson v. State*, 377 S.W.3d 712, 720 (Tex. Crim. App. 2012), we conclude Officer Anderson's subsequent attempted detention at the motel parking lot was supported by reasonable suspicion. *Slip op.*, at 8.

Prior to the court of appeal's opinion, neither party ever even mentioned "good faith" or "reasonable mistake of fact." More importantly, because lawfulness of the attempted detention was an element of the offense, only the jury was permitted to decide these issues. Yet, the jury was never instructed about nor or asked to consider these concepts either.

## ARGUMENT & REASONS FOR REVIEW

**I. The court of appeals rendered the rules meaningless when it abandoned its judicial role and assumed the role of an advocate to raise and decide an issue not briefed, argued, or addressed by either party at any time.**

Our adversarial system of justice, fundamental guarantees of due process, and the rules of procedure are based on the principle that the courts of appeal cannot create issues and arguments for a litigant. The court of appeals had no authority or discretion to re-frame an issue, assert appellate waiver, and advance an argument based on a legal theory that was never explained to the jury, argued to the jury, or argued to the court of appeals, much less briefed — even after it ordered re-briefing on another un-raised issue. If due process and the rules of procedure mean anything, the court of appeals' decision cannot stand.

**A. By advancing an argument on an issue not actually before it, the court of appeals disregarded decisions of this Court and numerous courts of appeal**

Importantly, the State strenuously argued at trial and at the motion for new trial stage (CR 14) that the facts proven at trial constituted one *continuous* evading arrest. The State maintained this argument on appeal. In fact, at least 10 different times the State argued in its brief that the events in evidence constituted only one evading detention. (State's Brief at 7, 29, 35, 40, 43, 44, 45, 49). By asserting waiver and arguing an issue affirmatively disavowed by the State (that the evidence

9

could have supported more than one evading), the court of appeals abandoned its judicial role.

In limited circumstances, "ordinary notions of procedural default" allow courts of appeal to uphold a trial *judge's* rulings on a basis not argued at a hearing. *State v. Mercado,* 972 S.W.2d 75, 77–78 (Tex.Crim.App. 1998) ("ordinary notions of procedural default" do not require a prevailing party to list or verbalize "in the trial court every possible basis for upholding" its decision). This is commonly referred to as the *Calloway* rule, and most often is used to uphold pretrial rulings. *See generally id.* (surveying cases dealing procedural default). But even in the procedural default context, this Court has cautioned against allowing parties to engage in "sandbagging." *See Wilson v. State*, 692 S.W.2d 661, 663 (Tex.Crim. App. 1984) (describing sandbagging as when the State takes a position on appeal inconsistent with its position in the trial court). Thus, courts have refused to employ the *Calloway* rule if it "would work a manifest injustice to the appellant." *State v. Esparza*, 413 S.W.3d 81, 89 (Tex. Crim. App. 2013).

Worse, here it was the court of appeals, not the State, advancing a theory inconsistent with the State's position in the trial court and on appeal. The State would have been foreclosed from advancing this position by this Court's ruling in *Callaway v. State*. 743 S.W.2d 645, 651–52 (Tex. Crim. App. 1988), and its progeny

from at least two courts of appeals. *See State v. Gonzales,* 850 S.W.2d 672 (Tex. App.—San Antonio 1993, no pet.) (refusing defendant's request to apply the *Calloway* rule to affirm an order suppressing evidence based on new grounds not raised in the trial court); *Sedani v. State,* 848 S.W.2d 314 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd) (opinion on reh'g) (holding an illegal arrest for failure to appear when the appellant tore up traffic citations could not be justified by the State's argument, made for the first time on appeal, that he *could* have been arrested for littering). Likewise, it was improper for the court of appeals to advance an argument on behalf of the State, which the State itself was precluded from making.

Similarly, only in rare circumstances may a court of appeals *sua sponte* decide "unassigned error." Unassigned error refers to "a claim that was preserved in the trial below but was not raised on appeal." *See Pena v. State,* 191 S.W.3d 133, 136 (Tex. Crim. App. 2006). Typically when a court reviews unassigned error it works to protect the rights of the accused. *See, e.g.*, *Hammock v. State*, 211 S.W.3d 874, 879 (Tex. App.—Texarkana 2006, no pet.) (reversing defendant's conviction because "the court's charge authorized the jury to convict him for conduct not defined as a criminal offense."); *Skelton v. State*, 655 S.W.2d 302, 304 (Tex. App.—Tyler 1983, pet. ref'd, untimely filed) ("Where a defendant has been deprived of due process under the state and federal constitutions, indeed it is our

11

constitutional duty to take appropriate decisional action to enforce such constitutional protections."). The opposite occurred here.

Moreover, by *Pena's* very definition the unassigned error concept contemplates that the issue was at least presented in the trial court. Not only did the State not present this theory, it repeatedly, consistently argued the opposite. By affirmatively arguing in the trial court and on appeal that the actions constituted one continuous evading detention, the court of appeals' decision conflicts with *Pena*. The United States Supreme Court has recognized the extreme disadvantage caused when the appellee benefits from "contrary assertions in the courts below." *Steagald v. United States*, 451 U.S. 204, 209 (1981).

Moreover, this Court has drastically limited the discretion of courts of appeals to employ the unassigned error doctrine, prohibiting its use when it requires a court to "re-frame" an issue. *State v. Bailey*, 201 S.W.3d 739, 744 (Tex.Crim.App.2006). In *Bailey,* the court of appeals' revision of appellant's point of error caused the court to, instead, decide "an issue that was neither ruled upon by the trial court, nor raised on appeal." *Id*. This Court explained that the court of appeals "should have answered the question posed by Appellant on appeal," reasoning that the question actually answered by the court of appeals "was not before it." *Id.* at 743. The same is true here.

The court of appeals' decision to address an issue that was not raised on appeal, and also invoke a legal concept (reasonable good faith mistake of fact) the jury had never heard of, all of which the State affirmatively disavowed in the trial court and in the State's brief is in conflict with this Court's decisions involving ordinary notions of procedural default and the unassigned error doctrine. The State would have been prohibited from advancing this contrary position on appeal. This Court should grant review to clarify whether a court of appeals can abandon its judicial role to advance an argument a litigant itself would be prohibited from making.

**B. Whether a court of appeals may adopt and advance its own legal theory of the case even though it was not argued to the jury or contemplated at any point in the trial court is an issue of first impression.**

The action of the court of appeals was unprecedented. It re-framed an issue and claimed Vidales waived the re-framed issue, precluding Vidales from arguing the issue on appeal, even though the court of appeals ordered re-briefing on an unrelated unassigned error. The court of appeals then advanced an argument on behalf of the State, even though the State never made the argument at trial or on appeal. The court of appeals then decided what the *jury* would have done if the argument had been raised and explained. This Court should grant review to clarify the fundamental, undecided question of whether a court of appeals may take

13

advantage of the appellate rules to violate fundamental notions of fairness, as well as due process at trial and on appeal.

## C. By re-framing the issue and advancing a brand new theory never argued or adopted by either party at any point, the court of appeals misconstrued the rules.

There are two rules at play here. Rule of Appellate Procedure 38.1 requires appellants to "state concisely all issues or points presented for review." Rule 38.9 allows courts of appeal that believe a case has not been adequately researched and presented to "postpone submission, require additional briefing, and make any other order necessary for a satisfactory submission of the case." Although these rules give "some discretion," they do not permit courts of appeal to "reach out" and rule "on an issue that was not raised." *Bailey*, 201 S.W.3d at 744. Because that is exactly what the court of appeals did, thereby substituting its own judgment for the jury's on an issue advanced only by the court of appeals after submission, review is warranted pursuant to Rule 66.3(c).

## D. The constitutional implications involved necessitate this Court's exercise of its supervisory power.

It is axiomatic that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of *every fact necessary* to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970) (emphasis added). This entitled Vidales to a unanimous jury verdict on the

14

lawfulness element of a single detention submitted to the jury. Indeed, a unanimous jury verdict "ensures that the jury agrees on the factual elements underlying an offense which requires more than a mere agreement on a violation of a statute." *Sanchez v. State*, 182 S.W.3d 34, 63 (Tex.App.—San Antonio 2005), *aff'd*, 209 S.W.3d 117 (Tex. Crim. App. 2006) (internal citations and quotations omitted). By upholding the conviction based on Anderson's "subsequent detention at the *motel parking lot*," the court appeals upheld a conviction based on a mere agreement on a violation of a statute — one never explained or argued to the jury at trial. *Slip op.*, at 8.

Worse, the argument advanced by the court of appeals, for the first time after submission, misstated and misapplied the law. Citing *Robinson*, the court of appeals opined that Anderson's "assumption" that Vidales had earlier committed the offense of evading constituted a "reasonable mistake about past facts," which justified his subsequent detention at the *motel parking lot*. But Anderson was not mistaken about any facts; he was mistaken about the law.

As the State conceded and the court of appeals agreed, Officer Anderson knew Vidales was not the black male that he was looking for. *Vidales v. State,* 07-13-00286-CR, 2015 WL 4116140 at *7 (Tex.App.—Amarillo July 7, 2015) (emphasis in original) ("[W]e agree with both Appellant and the State that the

attempted *initial* detention was not supported by adequate reasonable suspicion to warrant a lawful detention."). The court of appeals, misapplying this Court's decision in *Robinson v. State*, confused Anderson's mistake about whether Vidales had illegally evaded detention (a mistake of law) at the apartment complex as a mistake of fact. 377 S.W.3d 712 (Tex. Crim. App. 2012) (deciding a "dispute about the legal significance" of historical facts).[3] Had Anderson been incorrect about a *fact* — like whether Vidales was a black male, whether Vidales was driving an SUV or a sedan, or whether the reporting party called from a cell phone or a landline — that could be a mistake about a historical fact. Anderson's "assumption" that Vidales's conduct at the apartment complex, five hours earlier, allowed him to *legally* stop Vidales again at the motel parking lot was a mistake about the law. *Commerce Comm'n v. Louisville & Nashville R.R. Co.*, 227 U.S. 88, 91 (1913) ("[T]he legal effect of evidence is a question of law.").

Further, Officer Anderson was not permitted to make such a mistake. Texas law does not permit an officer to make a mistake of law, even if reasonable, without probable cause. Even in good faith, Article 38.23 prohibits using evidence obtained in violation of the constitution (e.g., unconstitutional searches and seizures). And

---

[3] The holding in *Robinson* is wholly inapplicable here because in an evading arrest case, the one and only arbiter of the facts and related legal conclusion on  the lawfulness element of a detention is the jury. *Woods v. State*, 153 S.W.3d 413, 415, n.2 (Tex. Crim. App. 2005).

our State's statutory good-faith excuse only applies when there is "a warrant issued by a neutral magistrate based on probable cause." TEX. CODE CRIM. P. art. 38.23(b). No warrant existed here. Good faith was not permitted.

Finally, the court of appeals violated basic notions of fairness when it, "[i]n the interest of justice, and out of an abundance of fairness to all parties," ordered re-briefing on an unassigned punishment issue not related to any issue raised at trial or on appeal. *Vidales v. State*, 07-13-00286-CR, 2014 WL 5462476, at *1. (Tex. App.—Amarillo Oct. 28, 2014), *appeal decided*, 07-13-00286-CR, 2015 WL 4116140 (Tex. App.—Amarillo July 7, 2015). At that point, by its own admission, the court of appeals had reviewed the record. Instead of allowing Vidales to brief a dispositive innocence issue it would later deem "waived," the court of appeals ordered briefing on a punishment issue when no punishment issue was ever addressed by the parties. This Court, in the interest of justice, must correct this error to maintain the integrity of the appellate process in this state.

## II. The court of appeals erred when it held Vidales's *two* encounters with Officer Anderson could have constituted *three* possible units of prosecution.

Under the Court's current framework, determining the legally supported units of prosecution in this case has been difficult. *Hobbs v. State*, 175 S.W.3d 777, 780 (Tex. Crim. App. 2005) (holding evading was one continuous offense when

"pursuit was temporarily suspended" due to officers and search dog being tired and "resumed several hours later when it was feasible for the officers to effectively search for the appellant.").

Trial counsel argued the facts supported only *one* unit of prosecution in the trial court. (CR 124-26). The prosecution argued it was *one* in the trial court. Citing *Hobbs*, Vidales argued it was *two* in his motion for new trial and on appeal. Citing *Hobbs*, the State maintained it was *one* unit of prosecution on appeal. During its deliberations, the jury even questioned whether the evidence supported one or two evading detentions:

> Is "the offense" isolated to the initial detention or does it include the subsequent attempted detention/arrest at the Executive Inn? (CR Supp. 9).

The court of appeals, however, held that this could form the basis for *three* possible "prosecution events:" "(1) the encounter at the apartment complex, (2) the encounter at the motel, or (3) the encounter at the motel as a continuation of the offense at the apartment complex." *Slip op.*, at 11. By the State's own concession, if the court of appeals or the jury considered the evidence as described in the first or third scenarios, the evidence was insufficient because the stop was unlawful (State's Brief at 41), *and* Vidales suffered jury charge error. (State's Brief at 49 [recognizing Vidales's right to jury unanimity but arguing "only one offense

18

of evading arrest or detention presented at trial," supporting only one "unit of prosecution"]).

Vidales agrees with the State's assessment regarding clarity in this area of the law: "[T]here are no clear rules for when evading is a continuing offense and when it is not." (State's Brief at 43). Thus, the law is "unsettled" on this issue. (*Id.*). And the court of appeals' decision only complicates things. This case provides the perfect vehicle by which this Court can provide much needed clarity for whether an evading detention offense can continue into perpetuity.

## III. The court of appeals erred when it failed to cite, analyze, or apply controlling caselaw cited by both the State and Vidales.

In addition to sufficiency, Vidales raised issues related to ineffective assistance of counsel, *see* Part IV *infra*, and jury charge error. On both of these issues, the court of appeals did no more than cite the law and jump straight to its conclusion.

To maintain the integrity of the appellate process, TEX. R. APP. P. 47.1[4] requires the courts of appeals to analyze the facts in light of the controlling law. *Sims v. State*, 99 S.W.3d 600, 603-04 (Tex. Crim. App. 2003) ("Rule 47.1 suggests that the courts of appeals should 'show their work,' much as we had to when

---

[4] The court of appeals must hand down a written opinion… that addresses every issue raised and necessary to disposition of the appeal."

learning long division in elementary school. . . ."). This required the court of appeals to rely on and *analyze* the correct legal authority when reaching its decision. *See Thomason v. State*, 892 S.W.2d 8, 10 n. 4 (Tex. Crim. App. 1994). Despite the clear direction of this Court and Rule 47.1, the court of appeals relied on inapplicable authority, not cited by either party, to abruptly conclude Vidales was not deprived of his constitutional right to a unanimous jury verdict. *Slip op.*, at 13.

The court of appeals disposed of Vidales's jury charge error in a total of nine sentences. The first three sentences describe the parties' arguments. The fourth sentence provides the court of appeals' conclusion. The next two sentences cited cases that were not argued by either party. The seventh sentence described the indictment. The only sentence that could conceivably qualify as analysis is the eight sentence: "Even though the jury could have concluded Appellant committed that offense in more than one manner, the gravamen of the offense has always been an evading detention offense alleged to have been committed on October 7, 2012." *Slip op.*, at 6. The final sentence overruled the issue.

Not only is the court of appeals' unprecedented holding regarding manner and means at odds with its earlier ruling that this case presented "three possible prosecution *events*," *Slip op.* at 11 (emphasis added), it conflicts with the only case cited by both Vidales and the State in their briefs. (Appellant's Opening Brief, at

64-67 [extensively citing and quoting *Ngo v. State*, 175 S.W.3d 738, 745 (Tex. Crim. App. 2005)]; State's Brief, at 48-49 [same]). In addition to *Ngo*, the State cited *Cosio v. State* for its holding that when dealing with separate units of prosecution, "[t]he judge's charge, to ensure unanimity, would need to instruct the jury that its verdict must be unanimous as to a single offense or unit of prosecution among those presented." 353 S.W.3d 766, 772 (Tex. Crim. App. 2011). A proper analysis of this issue reveals, by the court of appeals' own logic, that Vidales was subject to a non-unanimous verdict in violation of *Ngo* and *Cosio*.

Because the court of appeals did not cite, discuss, or distinguish *Ngo* or *Cosio*, opting instead to reach a conclusion that was incorrect based on *its own earlier ruling*, the court of appeals has decided a case of constitutional magnitude in a way that conflicts with Rule 47.1, this Court's precedent, and so far departed from the usual course of judicial proceedings, necessitating review under Rules 66.3(c), 66.3(d), and 66.3(f).

**IV.** **The court of appeals erred when, despite trial counsel's affidavit confessing ineffective assistance, it claimed the record was insufficiently developed to decide the issue.**

This Court has never explicitly held that an affidavit from trial counsel is sufficient to overcome the "strong presumption that counsel's conduct fell within a wide range of reasonable representation." *Salinas v. State*, 163 S.W.3d 734, 740

21

(Tex.Crim.App.2005) (internal citation omitted). The Court has, however, impliedly done so by finding ineffective assistance based on an affidavit from trial counsel. *Ex parte Varelas*, 45 S.W.3d 627, 632 (Tex.Crim.App.2001) (finding ineffective assistance of counsel based on trial counsel's affidavit claiming his failure to request burden of proof and limiting instructions on extraneous offense evidence was an oversight). This case provides an opportunity for this Court to squarely address the issue of whether an affidavit from trial counsel can overcome the reasonable representation presumption.

Here, attached to Vidales's motion for new trial, was an affidavit from trial counsel confessing ineffective assistance for not seeking proper jury instructions on reasonable suspicion. Trial counsel also explained how: because he believed this was "one continuous Evading Arrest," he did not move to quash the indictment, ask for an election between the two offenses, object to extraneous offense evidence, or request additional jury instructions. (CR 124-126).

Instead of addressing all of the allegations of ineffective assistance, the court of appeals avoided the issue, claiming "the record [was] insufficiently developed," suggesting that a writ of habeas corpus was more appropriate so that the record could be further developed. *Slip op.*, at 12.

Interestingly, the court of appeals cited five cases for this proposition, but none of them involved a scenario where direct evidence existed in the record providing insight into trial counsel's choices. *See Freeman v. State*, 125 S.W.3d 505, 511 (Tex. Crim. App. 2003) (finding ineffective assistance without *any* explanation from trial counsel); *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003) ("[T]he record is silent as to why appellant's trial counsel took or failed to take the actions which undermined the court of appeals' confidence in the convictions."); *Lopez v. State*, 343 S.W.3d 137, 143-44 (Tex. Crim. App. 2011) ("The record is silent as to why trial counsel failed to object to the outcry-witness testimony."); *Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999) ("The record in the case at bar is silent as to why appellant's trial counsel failed to object to the State's persistent attempts to elicit inadmissible hearsay."). The record here was not silent.

Even though this Court has never explicitly held an affidavit can overcome the strong presumption relating to trial counsel's conduct, at least one other court of appeals has. *Shanklin v. State*, 190 S.W.3d 154, 160 (Tex. App.—Houston [1st Dist.] 2005, pet. granted) ("[A]n affidavit from defense counsel defeats the presumption that defense counsel was employing a reasonable trial strategy."). This case provides the perfect opportunity for this Court to correct the conflict

amongst the courts of appeals, correct the implied conflict with this Court's *Varelas* decision, and address an issue that has not been, but should be, settled by this Court. TEX.R.APP.P. 66.3(a); 66.3(b); 66.3(c). Review should be granted.

## PRAYER FOR RELIEF

Vidales respectfully prays that this Court grant discretionary review, and after full briefing set this this case for oral argument, and that the decision of the Amarillo Court of Appeals affirming his conviction be reversed and judgment of acquittal entered. Alternatively, Vidales prays this Court reverse and remand this case to the Court of Appeals for further proceedings.

Respectfully submitted,

_____
Frank Sellers
Texas Bar No. 24080305
HURLEY, GUINN & SELLERS
1805 13th Street
Lubbock, Texas 79401
P: 806.771.0700
F: 806.763.8199
E: frank@hurleyguinn.com
*Attorneys for Appellant*

24

**CERTIFICATE OF SERVICE**

Pursuant to TEX. R. APP. P. 9.5(d), I certify that on August 14, 2015, the foregoing was served on opposing counsel *via* email to the following:

Lisa C. McMinn
Stacey M. Goldstein
State Prosecuting Attorney's Office
*Information@spa.texas.gov*

Jeff Ford
Lubbock County District Attorney's Office
*jford@lubbockcda.com*

_____
Frank Sellers

**CERTIFICATE OF COMPLIANCE**

Pursuant to Texas Rule of Appellate Procedure 9.4(i)(3), I hereby certify that this brief contains 4,496 words (excluding the caption, identification of the parties and counsel, statement regarding oral argument, table of contents, index of authorities, statement of the case, statement of issues presented, statement of procedural history, signature, certificate of service, certificate of compliance, and appendix). This is a computer-generated document created in Microsoft Word, using 14-point typeface for all text, except for footnotes which are in 12-point typeface. In making this certificate of compliance, I am relying on the word count provided by the software used to prepare the document.

_____
Frank Sellers

# TAB 1

Substitute Opinion of Court of Appeals



# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-13-00286-CR
_____

SAMMY VIDALES, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 137th District Court
Lubbock County, Texas
Trial Court No. 2012436579; Honorable John J. McClendon III, Presiding

July 7, 2015

## OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

By opinion and judgment dated May 15, 2015, this court affirmed the conviction of Sammy Vidales, Appellant herein, for evading arrest but reversed and remanded the cause for a new punishment hearing. *Vidales v. State,* No. 07-13-00286-CR 2015 Tex. App. LEXIS 5033 (Tex. App.—Amarillo May 15, 2015, pet. filed by State June 12, 2015). After due consideration, and within this court's plenary power over the judgment

issued, the court withdraws its opinion and judgment of May 15, 2015, and substitutes the following opinion and judgment. TEX. R. APP. P. 19.1(a).[1] *Univ. of Tex. Health Sci. Ctr. At Houston v. Gutierrez,* 237 S.W.3d 869, 870 (Tex. App.—Houston [1st Dist.] 2007, pet. denied).

Appellant was convicted by a jury of evading arrest or detention with a vehicle, an offense alleged to have been committed on the 7th day of October 2012.[2] Finding two enhancement paragraphs to be true, the jury sentenced him to sixty-two years confinement. By three issues raised through his original briefing, Appellant contends (1) his initial detention was not lawful because there were no specific and articulable facts supporting reasonable suspicion to detain him, (2) his trial counsel was ineffective, and (3) error in the jury charge failed to instruct the jury on unanimity of the verdict regarding what he perceived to be two separate evading arrest offenses on the same date. After original submission on the briefs, the parties were ordered to brief a previously unassigned, potentially meritorious issue concerning the legality of the sentence imposed.[3] By a supplemental brief, Appellant added a fourth issue contending he was egregiously harmed when the trial court authorized the jury to assess a sentence within the statutory punishment range provided by section 12.42(d) of the Texas Penal Code

---

[1] This court's plenary power expires sixty days after judgment if no timely filed motion for rehearing is pending. On June 15, 2015, Appellant did file a motion for rehearing; however, that motion was not timely filed. Although the State filed a *Petition for Discretionary Review,* it did not file a motion for rehearing; therefore, no timely filed motion for rehearing is currently pending.

[2] TEX. PENAL CODE ANN. § 38.04(a) (West Supp. 2014). Although formerly a state jail felony, effective September 1, 2011, evading arrest through the use of a motor vehicle is a third degree felony.

[3] *Vidales v. State*, No. 07-13-00286-CR, 2014 Tex. App. LEXIS 12255 (Tex. App.—Amarillo Oct. 28, 2014, no pet.).

without requiring the jury to first find an element essential to the enhanced punishment range, to-wit: the sequential finality of his prior convictions.[4]

The State responded to Appellant's first issue with a lengthy discussion concerning reasonable suspicion to lawfully detain Appellant and then concluded "it would appear that the attempted *lawful* detention element of evading arrest or detention was not met here." Without stating what the proper disposition should be when the State fails to prove an essential element of the offense charged, the State requests this court to "review [the issue] under the proper standard of review, and render an appropriate judgment and decision." The State then responds to issues two and three with a conclusion they should be overruled. Finally, by its supplemental brief, the State responds to the fourth issue by conceding Appellant was egregiously harmed by the omission of an essential instruction in the punishment charge. As to this error, the State contends we should reverse the sentence and remand the case for a new trial on punishment. We affirm in part and reverse and remand in part.

BACKGROUND

Shortly after midnight on October 7, 2012, Officer Justin Anderson of the Lubbock Police Department was dispatched to an apartment complex on a domestic disturbance call. The caller described the suspect as a black male. When Officer

---

[4] *See* TEX. PENAL CODE ANN. § 12.42(d) (West Supp. 2014) (providing that a third degree felony is punishable by imprisonment for life, or any term of not more than 99 years or less than 25 years if it is shown that the defendant has previously been convicted of two felony offenses, and the second previous felony conviction is for an offense that occurred subsequent to the first previous felony having become final).

3

Anderson and his partner arrived at the complex, they exited their vehicle and proceeded to the apartment of the reporting party. The suspect had already left.

While walking back to his patrol car, Officer Anderson observed an SUV driving in the parking lot without the headlights turned on. He ran toward the SUV and shined his flashlight inside and yelled for the driver to stop. The driver, a Hispanic male later identified as Appellant, complied. Officer Anderson admitted that, even though he realized the driver was not the suspect they were looking for, he asked Appellant for the keys to his SUV. Appellant inquired "why" and the officer responded "because I asked you to." Instead of complying, Appellant drove away and exited the complex. The officers were not near their patrol car and did not pursue Appellant. At that time, Officer Anderson did not report to dispatch that there was an "evading detention" in progress.

Approximately five hours later, while Officer Anderson was patrolling his area of the city, he observed what he believed to be the same SUV previously encountered at the apartment complex. At that time, he activated his emergency lights and the SUV pulled over into a motel parking lot. Appellant was the driver of that vehicle. This time Appellant exited his SUV and walked toward Officer Anderson. For safety reasons, Officer Anderson drew his weapon and ordered Appellant to his knees in order to handcuff him.[5] Appellant complied. As Officer Anderson was attempting to secure the handcuffs, they got caught in Appellant's jacket and he began moving around as if attempting to get away. Officer Anderson discarded the handcuffs, subdued Appellant with his body weight, and called for backup.

---

[5] Officer Anderson testified that Appellant did not have any weapons on his person.

4

Appellant managed to push Officer Anderson off and proceeded to his SUV. Officer Anderson then attempted to deploy his taser, but not all of the probes made contact with Appellant and he was not completely disabled. After Appellant entered his SUV, some of the taser leads broke off. Appellant then reversed his SUV, crashing it into Officer Anderson's patrol car before exiting the motel parking lot. Backup officers pursued Appellant, and after he wrecked his SUV, he was eventually apprehended while on foot.

ISSUE ONE—LEGALITY OF DETENTION

The lawfulness of a detention is an essential element of evading arrest or detention which is reviewed for legal sufficiency. *See York v. State*, 342 S.W.3d 528, 544 (Tex. Crim. App. 2011); *Woods v. State*, 153 S.W.3d 413, 415 (Tex. Crim. App. 2005). *See also Rodriguez v. State*, 578 S.W.2d 419, 420 (Tex. Crim. App. 1979) (finding evidence insufficient to find a lawful arrest where officer lacked reasonable suspicion to detain suspect). Here, Appellant alleges the State did not satisfy that element. We disagree.

STANDARD OF REVIEW

In assessing the sufficiency of the evidence to support a criminal conviction, this court considers all the evidence in the light most favorable to the verdict and determines whether, based on that evidence and reasonable inferences to be drawn therefrom, a rational trier of fact could have found the essential elements of the crime beyond a

reasonable doubt.  *See Jackson v. Virginia*, 443 U.S. 307, 33 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)*.  See also Brooks v. State,* 323 S.W.3d 893, 912 (Tex. Crim. App. 2010).

We measure the legal sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge.  *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).  In our review, we must evaluate all of the evidence in the record, both direct and circumstantial, whether admissible or inadmissible.  *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1131, 120 S. Ct. 2008, 146 L. Ed. 2d 958 (2000).  Furthermore, we must give deference to the responsibility of the trier of fact to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

ANALYSIS

A person commits the offense of evading arrest or detention with a vehicle if he (1) intentionally (2) flees (3) from a person he knows is a peace officer (4) attempting lawfully to arrest or detain him, and (5) he uses a vehicle while in flight.  TEX. PENAL CODE ANN. §§ 38.04(a), 38.04(b)(2)(A).  As to the issue of a lawful arrest or detention, the Fourth Amendment to the United States Constitution protects citizens from unreasonable searches and seizures at the hands of government officials.  *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007).  When a person pulls over in response to a patrol car's emergency lights rather than of his own accord, an investigatory detention has occurred.  *Crain v. State*, 315 S.W.3d 43, 52 (Tex. Crim. App. 2010).  For police officers to be able to conduct an investigative detention which is

lawful under the Fourth Amendment, they must have reasonable suspicion founded on specific, articulable facts. *Delafuente v. State*, 414 S.W.3d 173, 177 (Tex. Crim. App. 2013). Reasonable suspicion requires more than just a hunch; it exists only when an officer has specific, articulable facts that, taken together with reasonable inferences from those facts, would lead the officer to reasonably conclude the person detained is, has been, or soon will be engaging in criminal activity. *Crain*, 315 S.W.3d at 52; *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). This is an objective standard that disregards any subjective intent of the officer making the stop and looks solely to whether an objective basis for the stop exists. *Id.* A reasonable suspicion determination is an objective one made by considering the totality of the circumstances. *Id.* at 492-93.

By his first issue, Appellant contends the evidence is insufficient to support Officer Anderson's initial detention at the *apartment complex*, as a lawful detention. Appellant argues Officer Anderson did not have specific, articulable facts to support a reasonable suspicion to detain him because, at the time of that encounter, he knew Appellant was not a black male, the subject of his pending investigation. The State has conceded that, during the encounter at the *apartment complex* Officer Anderson did not have reasonable suspicion to believe that a crime had been committed or was in progress. In that respect, we agree with both Appellant and the State that the attempted *initial* detention was not supported by adequate reasonable suspicion to warrant a lawful detention. That said, Appellant does not challenge the lawfulness of Officer Anderson's subsequent detention at the *motel parking lot*. Because the failure to sufficiently advance the analysis of an argument can result in the waiver of that issue,

7

*Cardenas v. State*, 30 S.W.3d 384, 393 (Tex. Crim. App. 2000), we find Appellant has waived that issue.

Notwithstanding the waiver of this issue, it is clear from a review of the entire record that at the time of the encounter at the motel parking lot, Officer Anderson was operating in good faith, under the objective (albeit incorrect) assumption that Appellant had earlier committed the offense of evading detention. Because a police officer's reasonable mistake about past facts may justify his conclusion that there is reasonable suspicion for purposes of an investigatory detention, *Robinson v. State*, 377 S.W.3d 712, 720 (Tex. Crim. App. 2012), we conclude Officer Anderson's subsequent attempted detention at the motel parking lot was supported by reasonable suspicion.

Furthermore, even if reasonable suspicion did not exist at the commencement of the detention at the motel parking lot, during that second encounter, Appellant engaged in conduct that not only merited an investigatory detention, it justified a warrantless arrest. While Appellant initially complied with Officer Anderson's requests, at some point he ceased to be cooperative and attempted to flee. Despite Officer Anderson's attempt to physically subdue him through the use of non-deadly force, he continued to be combative. At some point, Appellant re-entered his SUV, crashed it into Officer Anderson's patrol vehicle, and sped off. Resisting an arrest or detention is unlawful, even if the officer attempting to effect the arrest lacks reasonable suspicion or probable cause. TEX. PENAL CODE ANN. § 38.03(b) (West 2011); *State v. Mayorga,* 901 S.W.2d 943, 945 (Tex. Crim. App. 1995). Giving deference to the responsibility of the jury to weigh this evidence, we find the evidence was legally sufficient, as to the subsequent

8

attempted detention, to establish Appellant's guilt as to the offense of evading arrest or detention with a vehicle. Accordingly, Appellant's first issue is overruled.

ISSUE TWO—INEFFECTIVE ASSISTANCE OF COUNSEL

By his second issue, Appellant contends he was denied effective assistance of counsel at the guilt-innocence phase of his trial because his counsel failed to (1) request an explanatory jury instruction concerning reasonable suspicion to stop, (2) file a pretrial motion to quash the indictment, (3) compel the State to elect the prosecution event, and (4) make appropriate objections to the evidence. To support those claims, Appellant filed a motion for new trial wherein he attached an affidavit from his trial counsel stating that it was his theory that the events in question constituted one continuous evading arrest. Because Appellant's second and third complaints raise an issue with respect to counsel's theory of the case, we will address those complaints together, before addressing the first and fourth complaints.

STANDARD OF REVIEW

The adequacy of defense counsel's assistance is based on the totality of the representation rather than isolated acts or omissions. *Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999). Although the constitutional right to counsel ensures the right to reasonably effective counsel, it does not guarantee errorless counsel whose competency or accuracy of representation is judged by hindsight. *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006).

9

The effectiveness of counsel's representation is measured by the two-pronged test enunciated in *Strickland v. Washington.* 466 U.S. 668, 687 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *See Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986) (adopting *Strickland* standard in Texas). The first prong of the *Strickland* test requires an appellant prove counsel made such serious errors that he did not function as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Appellant must show that counsel's performance was unreasonable under prevailing professional norms and that the challenged action was not part of counsel's sound trial strategy. *Id.* at 689-90. If deficient assistance is established, the second *Strickland* prong requires an appellant affirmatively demonstrate prejudice; that is, a reasonable probability that, but for counsel's unprofessional errors, the outcome of the case would have been different. *Thompson*, 9 S.W.3d at 812. "Reasonable probability" means probability of a degree sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694.

Our review of counsel's performance is highly deferential and a strong presumption exists that counsel's conduct fell within a wide range of reasonable professional assistance. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001). *See Strickland*, 466 U.S. at 689 (noting there are countless ways to provide effective assistance in any given case). To overcome the presumption of reasonable professional assistance, any allegation of ineffectiveness must be firmly rooted in the record. *Thompson*, 9 S.W.3d at 813-14. The showing of ineffectiveness must warrant the conclusion of a reviewing court that counsel's performance fell below an objective standard of reasonableness as a matter of law and that no reasonable trial strategy

10

could justify counsel's acts or omissions, regardless of his subjective reasoning. *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011).

In the majority of cases, the record on direct appeal is simply inadequate to show that counsel's conduct fell below an objectively reasonable standard of performance. *See Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003) (stating "[w]e have previously stated that the record on direct appeal will generally not be sufficient to show that counsel's representation was so deficient as to meet the first part of the *Strickland* standard as the reasonableness of counsel's choices often involves facts that do not appear in the appellate record"). "When such direct evidence is not available, we will assume that counsel had a strategy if any reasonably sound strategic motivation can be imagined." *Lopez*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011).

Here, based on the allegations contained in the indictment, there were three possible prosecution events: (1) the encounter at the apartment complex, (2) the encounter at the motel, or (3) the encounter at the motel as a continuation of the offense commenced at the apartment complex. When conduct alleged in a charging instrument can be construed as implicating more than one offense, a motion to quash is an appropriate means of forcing the State to be more specific as to the offense charged. *See State v. Draper*, 940 S.W.2d 824, 826 (Tex. App.—Austin 1997, no pet.) (holding that a trial court's decision to quash an indictment for lack of certainty in indictment's allegations is a matter within the discretion of the trial court). Furthermore, upon a proper request, a trial court is obligated to require the State to elect which of multiple instances of an offense the State was relying upon for conviction. *Phillips v. State*, 193

S.W.3d 904, 909-10 (Tex. Crim. App. 2006). Given the facts of this case, we cannot say that trial counsel did not have a legitimate trial strategy in adopting a position that the events in question constituted a single continuous offense. Accordingly, Appellant has not established the first prong of the *Strickland* test as to these complaints.

Furthermore, as to the complaints that Appellant's counsel failed to request an explanatory jury instruction concerning reasonable suspicion or make appropriate objections to the evidence, we find that the record is insufficiently developed to establish deficient performance in that regard. Where the alleged deficiency is an error of omission rather than commission, a collateral attack by means of a post-conviction writ of *habeas corpus* is generally the more appropriate vehicle by which to develop a detailed record of the alleged defective assistance. *See Freeman v. State*, 125 S.W.3d 505, 506-07 (Tex. Crim. App. 2003). *See generally Massaro v. United States*, 538 U.S. 500, 123 S. Ct. 1690, 155 L. Ed. 2d 714 (2003) (stating that when a claim of ineffective assistance of counsel is raised on direct appeal, a trial record is usually not developed for purposes of establishing such a claim). Accordingly, Appellant's second issue is overruled.

ISSUE THREE—CHARGE ERROR REGARDING UNANIMITY OF THE VERDICT

By his third issue, Appellant contends he was prejudiced by the trial court's failure to instruct the jury that their verdict required unanimous agreement as to the prosecution event. Appellant contends the court's charge authorized a guilty verdict if half of the jury thought he was guilty of evading detention at the apartment complex, while the other half thought he was guilty of evading detention at the motel parking lot.

12

The State contends unanimity is not a question because there was only one evading detention or arrest offense presented at trial. While we disagree with the State's position, we nonetheless find the question does not present reversible error.

Where the offense in question is a single offense with multiple or alternate methods of commission, unanimity is required with respect to all essential elements of the offense, even though jurors are not required to unanimously agree on the specific method of committing that offense. *Miranda v. State,* 391 S.W.3d 302, 310 (Tex. Crim. App. 2012). A jury is entitled to return a general verdict where evidence of an alternative manner and means of committing the charged offense is submitted to the jury. *Young v. State*, 341 S.W.3d 417, 422 (Tex. Crim. App. 2011). Here, the indictment merely averred that Appellant "on or before the 7th day of October, A.D. 2012, did then and there, while using a vehicle, intentionally flee from [Officer Anderson], a person [Appellant] knew was a peace officer who was attempting lawfully to arrest or detain the defendant." Even though the jury could have concluded Appellant committed that offense in more than one manner, the gravamen of the offense has always been an evading detention offense alleged to have been committed on October 7, 2012. Appellant's third issue is overruled.

ISSUE FOUR—ILLEGAL SENTENCE

By the fourth issue contained in his *Supplemental Brief*, Appellant contends his sentence is an illegal sentence because it exceeds the maximum sentence for a second degree felony. With admirable candor, by its *Supplemental Letter Brief,* the State concedes (1) the trial court's punishment charge erroneously fails to require the jury to

13

find sequential finality of the prior felony conviction as required by section 12.42(d) of the Texas Penal Code and *Jordan v. State*, 256 S.W.3d 286, 290-91 (Tex. Crim. App. 2008), and (2) Appellant suffered "egregious harm" from the lack of a jury instruction requiring the jury to find the second previous felony conviction was for an offense that occurred subsequent to the first previous felony conviction having become final. *See Reynolds v. State*, 227 S.W.3d 355, 361-65 (Tex. App.—Texarkana 2007, no pet.) (finding egregious harm from the failure to instruct the jury that the State had to prove the enhancement paragraphs beyond a reasonable doubt). As to this error, the State admits we should reverse the sentence and remand the case for a new trial on punishment. We agree.

With certain exceptions not applicable to the facts of this case, if it is shown on the trial of a felony of the third degree that the defendant has previously been finally convicted of a felony other than a state jail felony, on conviction the defendant shall be punished for a felony of the second degree.[6] TEX. PENAL CODE ANN. § 12.42(a) (West Supp. 2014). Furthermore, again with certain exceptions not applicable here, if it is shown on the trial of a felony of the third degree that the defendant has previously been finally convicted of two felonies, and the second previous felony conviction was for an offense that occurred subsequent to the first previous felony conviction having become final, on conviction the defendant shall be punished by imprisonment for life, or for any

---

[6] While an offense may be "punished" as a higher degree of felony, for purposes of the judgment, the offense remains the same "level of offense" provided by the particular statute under which the conviction was obtained. *Ford v. State*, 334 S.W.3d 230, 235 (Tex. Crim. App. 2011) (holding that while the punishment level may have been increased, the "level of offense" was not increased).

term of not more than 99 years or less than 25 years. TEX. PENAL CODE ANN. § 12.42(d) (West Supp. 2014).

In this case, the indictment alleged three prior felony convictions. The State waived the second enhancement and proceeded to trial on the basis of two prior convictions: (1) the offense of aggravated robbery in cause number 94-419,354 and (2) the offense of burglary of a habitation in cause number 2008-419,494. While the State did prove up these prior felony convictions, it never requested a jury finding that the second previous felony conviction was for an offense that occurred subsequent to the first previous felony conviction having become final, nor did it object to the trial court's failure to include such an instruction. Consequently, the jury never made the essential fact finding necessary to elevate the range of punishment to confinement for a minimum term of 25 years in accordance with section 12.42(d). *Id.*

Based upon the findings of the jury, the applicable range of punishment for the offense for which Appellant was convicted was that of a second degree felony, i.e., by imprisonment for any term of not more than twenty years or less than two years and by a fine not to exceed $10,000. TEX. PENAL CODE ANN. § 12.33 (West 2011). Since the term of confinement exceeded the maximum sentence allowable by law, according to the fact findings in this case, it is inconsequential whether we construe that error as the assessment of an unlawful sentence or jury charge error because under either analysis, the result is the same—reverse and remand for a new punishment hearing. This is so

because the State has conceded in its *Supplemental Brief* that "the record reveals that Appellant suffered 'egregious harm' from the lack of a jury instruction."

Accordingly, Appellant's fourth issue is sustained.

CONCLUSION

That portion of the verdict and judgment pertaining to Appellant's conviction is affirmed, while that portion of the verdict and judgment pertaining to Appellant's punishment is reversed and this cause is remanded to the trial court for a new punishment trial pursuant to article 44.29(b) of the Texas Code of Criminal Procedure. In remanding this cause for a new punishment hearing, we express no opinion as to appropriate range of punishment on retrial.[7]

Patrick A. Pirtle
Justice

Publish.

---

[7] Based upon the jury findings from the first trial, the appropriate range of punishment would be that of a second degree felony. The question of whether the State can seek additional findings on retrial regarding the applicability of section 12.42(d) of the Texas Penal Code was not an issue before us and we expressly decline the opportunity to offer an opinion on that question without adequate briefing.

# TAB 2

Motion to Extend Time

ACCEPTED
07-13-00286-CR
SEVENTH COURT OF APPEALS
AMARILLO, TEXAS
6/12/2015 4:33:07 PM
Vivian Long, Clerk

CAUSE NO. 07-13-00286-CR

| | | |
|---|---|---|
| SAMMY VIDALES | § | IN THE SEVENTH COURT OF APPEALS |
| | § | |
| V. | § | OF TEXAS |
| | § | |
| STATE OF TEXAS | § | IN AMARILLO, TEXAS |

_____

## MOTION TO EXTEND TIME TO FILE MOTION FOR REHEARING
_____

TO THE HONORABLE JUSTICES OF THE COURT OF APPEALS:

Comes now SAMMY VIDALES, Appellant, pursuant to TEX. R. APP. P. 49.8 & 10.5(b), and files this *Motion to Extend Time to File Motion for Rehearing* requesting an additional 15 days in which to file a Motion for Rehearing. In support of this motion, Appellant shows the Court the following:

### I.

**A. *Deadline for Filing the Item in Question*:** Appellant's Motion for Rehearing was due on June 1, 2015.[1]

**B. *Length of Extension Sought*:** Appellant seeks an additional 15 days to file the Motion for Rehearing.

**C. *Facts Relied on to Explain Need for Extension*:**

- This Court released the opinion in this case on May 15, 2015. Monday

---

[1] The Court's opinion was issued on May 15, 2015. Because the 15-day deadline to file a motion for rehearing fell on a Saturday, this extended the deadline until Monday, June 1, 2015.

May 25, 2015 was Memorial Day, and the office was closed on that day.

- On May 26, 2015, undersigned began a jury trial in *State v. Julio Arce*, Cause No. 2014-477,576; in the Lubbock County Court at Law No. 2. On the second day of trial, an agreement was reached. Preparing for and partially trying the case consumed a significant part of defense counsel's time.

- The following week, on June 1, 2015, defense counsel began a four-day jury trial in *State v. Harrison Hood*, Cause No. 2012-471,374, in the Lubbock County Court at Law No. 2. Preparing for and trying the case consumed a significant amount of defense counsel's time.

- Immediately following the conclusion of *State v. Hood*, defense counsel left town for vacation for the weekend.

- In addition to the trials above, defense counsel was also set to appear in at least 6 different courts on behalf of 20 different clients during the thirty days following the day the Court's opinion was released.

- Due to mischance, defense counsel was scheduled for all of these various trials in the time Appellant's Motion for Rehearing was due.[2]

---

[2] *See Houser v. McElveen*, 243 S.W.3d 646, 647 (Tex. 2008) (emphasis added) (explaining that extension of time should be granted if "*any* plausible statement of circumstances indicating

In order to provide effective assistance of counsel and comply with disciplinary rules, defense counsel needed to adequately prepare for each hearing on each case, as well as for each of these trials.[3]

**D. *Number of Previous Extensions Granted Regarding Item in Question*:**

Appellant has not requested any previous extensions of time to file this document.

## II.

Should the Court deny this Motion, Appellant will be denied the effective assistance of counsel.

WHEREFORE, Appellant prays the Court extend the deadline to file the Motion for Rehearing until June 15, 2015.

Respectfully submitted,

_____
Frank Sellers
Texas Bar No. 24080305
HURLEY & GUINN
1805 13th Street
Lubbock, Texas 79401
806.771.0700 tel
806.763.8199 fax
frank@hurleyguinn.com
*Attorney for Appellant*

---

that failure to file within the [specified] period was not deliberate or intentional, but was the result of inadvertence, mistake, or mischance.").

[3] *See* TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.01(b)(1) ("In representing a client, a lawyer shall not neglect a legal matter entrusted to the lawyer.").

## Certificate of Service

This is to certify that on June 12, 2015, a true and correct copy of the above and foregoing Motion was delivered to:


Jeff Ford
Lubbock County District Attorney's Office
*Via email to jford@lubbockcda.com*

Lisa McMinn & Stacey Goldstein
State Prosecuting Attorney
*Via email o information@spa.texas.gov*


Frank Sellers